FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND** JUN 35 P 12: 20
**(NORTHERN DIVISION)**

CLERK'S OFFICE
AT BALTIMORE

| | | |
|---|---|---|
| FIDELITY AND GUARANTY LIFE | : | BY_____DEPUTY |
| INSURANCE COMPANY, *et al.*, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:02-cv-3159-JFM |
| VIRGIL A. CHAMBERS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

<u>**CONSENT JUDGMENT**</u>

This is an interpleader action brought by Fidelity and Guaranty Life Insurance Company ("F&G

Life"), pursuant to 28 U.S.C. §§ 1335, 1397, and 2361, to determine the respective rights of Singer Asset

Finance Company, L.L.C. ("Singer"), United States Fidelity and Guaranty Company ("USF&G"), Virgil A.

Chambers ("Mr. Chambers"), Lisa M. Chambers ("Ms. Chambers"), and the Tennessee Department of

Human Services Child Support Enforcement Office ("State of Tennessee") to receive payments under F&G

Life Annuity Policy No. I477370 (the "Annuity").

On or about December 10, 1987, Mr. Chambers entered into a "Settlement Agreement" with Baird

Tree Company, Inc. and its insurer, USF&G.

Under the terms of the Settlement Agreement, USF&G is obligated to pay to Mr. Chambers future

periodic payments of $20.00 per month from December 1988 through December 1992, and $1,000.00 per

month beginning in December 1992 and continuing for Mr. Chambers' life, with payments guaranteed for

thirty years.

USF&G purchased the Annuity to fund its periodic payment obligations to Mr. Chambers under the Settlement Agreement.

On or about October 7, 1999, the State of Tennessee obtained a Contempt Order and Income Assignment (the "Income Assignment") against Mr. Chambers, which required F&G Life to forward to the State of Tennessee $338.10 of each monthly Annuity payment in order to satisfy Mr. Chambers' past child support obligations.

On or about June 21, 2000, Mr. Chambers entered into a Loan Agreement with Merrick Bank Corporation ("Merrick"), under which Merrick loaned Chambers the sum of $48,111.00 (the "Loan Agreement"). Mr. Chambers agreed to repay that sum, with interest, with the following payments under the Settlement Agreement and/or Annuity: One hundred fifty six consecutive monthly payments in the amount of $1,000.00, commencing with the payment due June 28, 2000 and ending with the payment due May 28, 2013. Merrick assigned its rights under the Loan Agreement to Singer.

The transactions between Mr. Chambers, who was then a resident of the State of Tennessee, and Merrick took place in the State of Tennessee. No state structured settlement protection act applied to these transactions.

Mr. Chambers caused payments under the Settlement Agreement and/or Annuity to be redirected to himself, and otherwise failed and refused to forward those payments to Singer.

As a result of Mr. Chambers' redirection of payments, Singer commenced an action against Chambers in the Chancery Court of Scott County, Tennessee in the action captioned *Singer Asset Finance Company, L.L.C. v. Virgil A. Chambers*, Case No. 8627 (Tenn. Ch. Ct, Scott County) (the "Tennessee

236453/1922.8

Action"). A judgment in the amount of $201,661.22 was entered in favor of Singer and against Chambers in the Tennessee Action.

F&G Life commenced this interpleader action on or about September 24, 2002 by filing a Complaint naming Mr. Chambers, Ms. Chambers, Singer, and USF&G as Defendants. By Order dated September 27, 2002, the Court dismissed F&G Life from the case with prejudice, but providing that F&G Life could seek its attorneys' fees and costs, and/ordered USF&G, Singer, Mr. Chambers, and Ms. Chambers to plead and pursue their claims among themselves in connection with their respective rights and claims to the Annuity payments.

By Order dated August 18, 2003, F&G Life was permitted to file an Amended Complaint adding the State of Tennessee as a party Defendant.

All Defendants have been properly served with process. Mr. Chambers and Ms. Chambers failed to respond to the Complaint or the Cross Claims of Singer and USF&G, and on March 5, 2003 and July 31, 2003, the Court entered Orders of Default against Mr. Chambers and Ms. Chambers, respectively.

Upon the joint Motion of Singer, the State of Tennessee, and USF&G, it is this _____ day of _____ 2006 ORDERED that:

1.    Mr. Chambers, by virtue of his default in this matter, hereby forfeits any claims that he had, has, or may ever have to the Annuity payments that have been paid into the Registry of the Court, and to all Annuity payments made pursuant to this Consent Judgment.

2.    Pursuant to the Court's authority under 28 U.S.C. §§ 1651 and 2361:

a.    Mr. Chambers, and anyone claiming any interest derived in any way from him, is

236453/1922.8                                    3

permanently enjoined from continuing or ever bringing any action or making any claim against F&G Life, USF&G, the State of Tennessee,  and/or Singer based upon or arising out of the Settlement Agreement, the Annuity, the Income Assignment, or the Loan Agreement;

b.      Ms. Chambers, and anyone claiming any interest derived in any way from her, is permanently enjoined from continuing or ever bringing any action or making any claim against F&G Life, USF&G, the State of Tennessee,  and/or Singer based upon or arising out of the Settlement Agreement, the Annuity, the Income Assignment, or the Loan Agreement;

c.      Singer, and anyone claiming any interest derived in any way from it, is permanently enjoined from continuing or ever bringing any action or making any claim against F&G Life, USF&G, and/or the State of Tennessee based upon or arising out of the Settlement Agreement, the Annuity, the Income Assignment, or the Loan Agreement;

d.      The State of Tennessee, and anyone claiming any interest derived in any way from it, is permanently enjoined from continuing or ever bringing any action or making any claim against F&G Life, USF&G, and/or Singer based upon or arising out of the Settlement Agreement, the Annuity, the Income Assignment, or the Loan Agreement;

e.      F&G Life, and anyone claiming any interest derived in any way from it, is

236453/1922.8                          4

permanently enjoined from continuing or ever bringing any action or making any

claim against USF&G, the State of Tennessee, and/or Singer based upon or arising

out of the Settlement Agreement, the Annuity, the Income Assignment, or the Loan

Agreement;

      f.      USF&G, and anyone claiming any interest derived in any way from it, is

permanently enjoined from continuing or ever bringing any action or making any

claim against F&G Life, the State of Tennessee, and/or Singer based upon or

arising out of the Settlement Agreement, the Annuity, the Income Assignment, or

the Loan Agreement.

      3.      F&G Life is released from any liability to USF&G, Singer, the State of Tennessee Ms.

Chambers, Mr. Chambers, or anyone claiming any interest derived in any way from Ms. Chambers or Mr.

Chambers, on account of any Annuity payments F&G Life may have made to any person or entity prior to

the date of this Consent Judgment.

      4.      USF&G is released from any liability to F&G Life, Singer, the State of Tennessee, Ms.

Chambers, Mr. Chambers, or anyone claiming any interest derived in any way from Ms. Chambers or Mr.

Chambers, on account of any Annuity payments F&G Life may have made to any person or entity prior to

the date of this Consent Judgment.

      5.      Singer is released from any liability to USF&G, F&G Life, the State of Tennessee, Ms.

Chambers, Mr. Chambers, or anyone claiming any interest derived in any way from Ms. Chambers or Mr.

Chambers, on account of any Annuity payments F&G Life may have made to any person or entity prior to

236453/1922.8

the date of this Consent Judgment.

6. The State of Tennessee is released from any liability to F&G Life, USF&G, Singer, Ms.

Chambers, Mr. Chambers, or anyone claiming any interest derived from Ms. Chambers or Mr. Chambers,

on account of any Annuity payments F&G Life may have made to any person or entity prior to the date of

this Consent Judgment.

7. 10% of the interest earned on the funds deposited into the Registry of the Court shall be

retained by the Court as its Registry fee.

8. F&G Life's attorneys' fees and expenses in the amount of $2,466.50 shall be paid from the

remaining monies in the Registry of the Court.

9. All remaining monies in the Registry of the Court shall be paid to Singer at the following

address:

Singer Asset Finance Company, L.L.C.<br>
Attention:  Kenneth R. Barnett, Esquire<br>
2700 North Military Trail, Suite 300<br>
Boca Raton, Florida 33431.

10. USF&G shall instruct F&G Life and F&G Life shall follow USF&G's instruction to make

the next $2,466.50 in payments due under the Annuity to Singer at the following address:

Singer Asset Finance Company, L.L.C.<br>
P.O. Box 19391A<br>
Newark, New Jersey 07195-0391.

The remaining balance due under the then current monthly Annuity payment after this payment to Singer

shall be divided between and paid to Singer and the State of Tennessee as follows: 33.3% to the State of

Tennessee; 66.7% to Singer.  Payments to Singer shall be made to the address indicated in this paragraph.

236453/1922.8

Payments to the State of Tennessee shall be made to the following address:

> Central Child Support Receipting
> Unit, P.O. Box 305200
> Nashville, Tennessee 37229.

11.     Thereafter and through July 2010, USF&G shall instruct F&G Life and F&G Life shall follow USF&G's instruction to make each monthly payment under the Annuity as follows: $338.10 to the State of Tennessee and $661.90 to Singer. Payments shall be made to the addresses indicated in paragraph 10.

12.     From August 2010 through February 2013, USF&G shall instruct F&G Life and F&G Life shall follow USF&G's instruction to make each monthly payment under the Annuity as follows: $225.40 to the State of Tennessee and $774.60 to Singer. Payments shall be made to the addresses indicated in paragraph 10.

13.     From March 2013 through August 2015, USF&G shall instruct F&G Life and F&G Life shall follow USF&G's instruction to make each monthly payment under the Annuity as follows: $112.70 to the State of Tennessee and $887.30 to Singer. Payments shall be made to the addresses indicated in paragraph 10.

14.     From September 2015 through November 2027, USF&G shall instruct F&G Life and F&G Life shall follow USF&G's instruction to make each monthly payment due under the Annuity to Singer at the address indicted in paragraph 10.

15.     Should Chambers die prior to November 28, 2022, no annuity payments after the annuity payment to be made on November 28, 2022, shall be made to any party. Each and every annuity payment

236453/1922.8                                          7

to be made after November 28, 2022 (*i.e.*, "Life Contingent Payment"), is contingent upon Chambers'
being alive on the date the payment is due and owing. The following procedures shall govern all Life
Contingent Payments: (i) if at any time Singer receives documentation or other evidence that Chambers has
died, Singer shall so advise USF&G and F&G Life by prompt written notice, and F&G Life may, upon
receipt of such notice, immediately suspend Annuity payments pending receipt of current proof of
Chambers' survival; (ii) if, at any time, USF&G or F&G Life has a reasonable basis for its believing that
Chambers has died, F&G Life (upon its own initiative or at the direction of USF&G) may so notify Singer
and immediately suspend the Annuity payments until and unless Singer furnishes current proof of Chambers'
survival; (iii) upon request by USF&G or F&G Life, Singer shall make available for inspection and copying
any and all documents received by Singer evidencing Chambers' survival or, alternatively, evidencing his
death.

16.    The following procedures shall govern in the event Singer receives a Life Contingent
Payment for which the scheduled due date is a date that is subsequent to the date of Chambers' death
("Post Death Payment"):

a.   In the event that Singer notifies F&G Life and USF&G of Chambers' death, Singer
shall refund to F&G Life any Post Death Payments it may have received within twenty
days of such notice;

b.   In the event F&G Life is aware of Chambers' death at the time of making a Post Death
Payment, Singer shall refund to F&G Life such Post Death Payment within twenty days
of demand by F&G Life.

236453/1922.8                                          8

c.   In addition to refunding any Post Death payments received, Singer shall be obligated to pay F&G Life interest on the amount of such refund at an annual rate equal to the sum of four percent (4%) plus the prime rate as published in the "Money Rates" column of *The Wall Street Journal* on the first publication date following Chambers' death. In the event that Singer provides notice of Chambers's death pursuant to Section 16(a) hereof, such interest shall accrue (i) from the date Singer learned of Chambers's death for Post Death Payments made prior to Singer learning of the death; and (ii) from the due date of any Post Death Payments from payments made after Singer learns of Chambers's death. If F&G Life demands repayment pursuant to Section 16(b) hereof, interest shall begin to accrue on Post Death Payments received by Singer from the earlier of (i) the date of the demand by F&G Life for repayment of a Post Death Payment ("Date (i)"), and (ii) three (3) months from the date of Chambers's death ("Date (ii)") for Post Death Payments received before the earlier of Date (i) and Date (ii). Interest shall begin to accrue on Post Death Payments made after the earlier of Date (i) and Date (ii). All interest owed pursuant to this Section 16 shall continue until the date of refund by Singer. For example, if (a) the due date for the Annuity payments is the 15th of the month; and (b) Chambers dies on January 1; and (c) Post Death payments are made January 15 ("Payment 1"), February 15 ("Payment 2"), March 15 ("Payment 3"), April 15 ("Payment 4"), May 15 ("Payment 5"), and June 15 ("Payment 6"); and (d) demand for repayment is given by F&G Life on July 1; and (e)

the Post Death payments are refunded by singer on July 21, then interest will be owed

from April 1 until July 21 for Payments 1, 2 and 3, from April 15 until July 21 for

Payment 4, from May 15 until July 21 for Payment 5, and from June 15 until July 21

for Payment 6.

17.     Singer shall indemnify, defend, and hold harmless F&G Life and USF&G from any claim

made or action brought by Mr. Chambers, Ms. Chambers, or any other person (i) on account of any

Annuity payments that were made to Singer up to this date; (ii) on account of any Annuity payments that are

to be made to Singer pursuant to this Consent Judgment; or (iii) for any actions or omissions occurring prior

to the date of this Consent Judgment and arising out of or from  the payment of monies to Singer under the

Annuity, the Settlement Agreement, or the Income Assignment. Singer's indemnification shall include all

actual attorneys' fees, costs, and expenses incurred by F&G Life and/or USF&G as a consequence of any

such claim or action.

18.     Nothing in this Consent Judgment shall preclude F&G Life, USF&G and/or Singer from

raising any claim or issue that was raised or that could have been raised in the present case, except for

issues relating directly to the Settlement Agreement, the Annuity, the Periodic Payments and/or the Purchase

Agreement in any pending or future case.  This Consent Judgment, and/or the actions and representations of

F&G Life, USF&G and/or Singer in satisfying their respective obligations in connection with this Consent

Judgment, shall not constitute evidence in this or any matter, and is not intended to constitute evidence in any

other matter that: (i) payments under a structured settlement contract or annuity or related contracts can or

cannot be assigned or that "anti-assignment" or "anti-encumbrance" provisions in structured settlement

236453/1922.8                          10

contracts or annuities or related contracts are not valid and enforceable; (ii) other transactions entered into by Singer and its customers constitute or do not constitute valid sales and/or loans; (iii) F&G Life, USF&G and/or Singer has waived any right in connection with any other litigation or claims; (iv) F&G Life, USF&G and/or Singer has waived any right or claims with respect to any matter other than the Structured Settlement Agreement, the Annuity, the Periodic Payments, or the Purchase Agreement; or (v) F&G Life, USF&G and/or Singer has waived any right or claims with respect to the transfer, processing and/or conditions for payment of any annuity payments that are life contingent other than those Life Contingent Payments specifically payable to Chambers pursuant to this Consent Judgment.

19.    That nothing contained in this Consent Judgment shall be deemed to imply that any person or entity other than USF&G has or has ever had any rights of ownership or control of the Annuity.

20.    That this Consent Judgment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns (if any). None of the parties hereto and none of their respective successors and permitted assigns may assign any of its rights under this Consent Judgment unless (i) the assignment covers all of the assignor's rights hereunder, (ii) the assignee expressly assumes all of the assignor's obligations hereunder; and (iii) the assignor and assignee jointly confirm in writing, in a form reasonably acceptable to F&G Life and USF&G that the foregoing conditions (i) and (ii) have been satisfied. Any purported assignment that fails to satisfy all of the foregoing conditions shall be null and void.

21.    Except as provided herein, each party shall bear his, her or its own costs incident to the action.

236453/1922.8                                11

22.    That nothing in this Consent Judgment shall preclude any party from bringing an action to enforce the terms of the Consent Judgment.

23.    That this Court shall retain jurisdiction over this matter to enforce any and all matters relating to this Consent Judgment.

_____
J. Frederick Motz
United States District Court

236453/1922.8                                12